**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALISA MARIE EYVONNE G.W.,[1]<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　　Defendant. | ) Case No. CV 19-4185-JPR<br>)<br>)<br>)<br>) MEMORANDUM DECISION AND ORDER<br>) REVERSING COMMISSIONER<br>)<br>)<br>)<br>)<br>)<br>) |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her applications for disability insurance benefits ("DIB") and Social Security supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed January 14, 2020,

---

[1] Plaintiff's name is partially redacted in line with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

which the Court has taken under submission without oral argument. For the reasons below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

**II.  BACKGROUND**

Plaintiff was born in 1982. (Administrative Record ("AR") 271.) She graduated from high school and completed one year of college. (AR 309.) She worked part time in retail from 1996 to 1998 and full time as a caregiver providing in-home support from 1998 to 2005. (Id.) She also worked part time in real estate from 1999 to 2004. (Id.) On March 26, 2015, she applied for benefits, alleging that she had been unable to work since June 1, 2006, because of posttraumatic stress disorder, chronic obstructive pulmonary disease, depression, severe anxiety, asthma, and lower lumbar damage. (AR 271, 308.) After her applications were denied (AR 125-42, 144-48, 150-54), she requested a hearing before an Administrative Law Judge (AR 158-66). Hearings were held on October 12, 2017, and April 19, 2018, at which Plaintiff, represented by counsel, testified, as did two vocational experts.[2] (AR 76-113.) In a written decision issued May 9, 2018, the ALJ determined that Plaintiff was not disabled. (AR 60-70.) On December 11, 2018, the Appeals Council denied her request for review. (AR 1-4.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the

---

[2] At the close of the first hearing, the ALJ requested that Plaintiff be sent for consulting examinations, which she attended. (AR 78, 112-13.) At the supplemental hearing, the hypotheticals to the VE were adjusted accordingly and the ALJ acknowledged receipt of additional information. (AR 78.)

Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is "more than a mere scintilla, but less than a preponderance." Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).

### A. The Five-Step Evaluation Process

An ALJ follows a five-step sequential evaluation process to assess whether someone is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

sufficient residual functional capacity ("RFC")[3] to perform her past work; if so, she is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.  The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2006. (AR 62.) Her date last insured was December 31, 2010. (Id.) At step two, she determined that Plaintiff had severe impairments of "asthma; chronic obstructive pulmonary disease; lumbago; depression; posttraumatic stress disorder; and a borderline personality disorder." (Id.)

At step three, she concluded that Plaintiff's impairments

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

did not meet or equal any of the impairments in the Listing. (AR 63.) At step four, she determined that Plaintiff had the RFC to perform light work

> except for any work involving even moderate exposure to environmental irritants. Additionally, the claimant can perform simple, repetitive tasks with no more than occasional changes in the work setting. She cannot have any public contact, can have no more than occasional and superficial contact with coworkers or supervisors; and cannot work at a production pace (the work just has to be completed by the end of the day).

(AR 63-64.) The ALJ found Plaintiff unable to perform her past relevant work and continued to step five. (AR 68.)

At that step, considering Plaintiff's age, education, work experience, and RFC and the VE's testimony, she concluded that Plaintiff could perform several jobs existing in significant numbers in the national economy. (AR 68-69.) Accordingly, she found her not disabled. (<u>Id.</u>)

**V.   DISCUSSION**[4]

Plaintiff argues that the ALJ failed to acknowledge the

---

[4] In <u>Lucia v. SEC</u>, 138 S. Ct. 2044, 2055 (2018), the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent <u>Lucia</u> applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during her administrative proceedings. (<u>See</u> AR 76-113, 356-57); <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended); <u>see also</u> <u>Kabani & Co. v. SEC</u>, 733 F. App'x 918, 919 (9th Cir. 2018) (rejecting <u>Lucia</u> challenge because plaintiff did not raise it during administrative proceedings), <u>cert. denied</u>, 139 S. Ct. 2013 (2019).

consulting examiner's "limitation" to "simple one and two part instructions" and did not explain why it was not included in her RFC. (J. Stip. at 7-8.)

As discussed below, the ALJ rendered the record ambiguous by failing to assign any particular weight to any of the mental-health doctors' opinions and by not explaining why, despite apparently relying on the consulting examiner's opinion, she did not incorporate into Plaintiff's RFC or even address his finding that "[s]he can remember and comply with simple one and two part instructions." (AR 794.) The omission was not harmless because none of the jobs identified by the ALJ as ones Plaintiff could perform are consistent with such a limitation.

A. Relevant Background

1. *Consulting Examiner*

Consulting examiner Mark Pierce, a clinical psychologist, performed a psychological examination on November 22, 2017. (AR 788-94.) After administering a variety of tests and interviewing Plaintiff, he assessed her "work capacity and prognosis." (AR 793-94.) Among other things, Plaintiff "apparently retain[ed] the mental capacity to complete simple and repetitive-to-only somewhat higher-demand vocational skills and to adapt to minimal changes in a work environment." (AR 794.) Her reasoning capacities were "judged adequate to this lower level of vocational functioning." (Id.) She would have "moderate-to-greater difficulty working effectively with others, due to her contentious approach." (Id.) She could "remember and comply with simple one and two part instructions" and "concentrate just adequately for a low-demand regular work schedule for a full

7

workweek, presuming she continue[d] with her psychological treatment, while she require[d] more focused psychotherapeutic addressing of her very difficult interpersonal manner." (Id.)

### 2. *ALJ's Decision*

After finding "severe impairments" of depression, PTSD, and borderline personality disorder, among various physical ailments, the ALJ determined that Plaintiff did "not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments" in the regulations. (AR 62-63.) In so concluding, she noted that Plaintiff had

> mild mental limitation in understanding, remembering, or applying information, and in adapting or managing herself. She has moderate mental limitations in social interaction and in maintaining concentration, persistence, or pace.

(AR 63.) At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of light work. (AR 63-64.) The ALJ noted that Dr. Pierce found that Plaintiff "retained the mental capacity to complete simple and repetitive tasks and adapt to minimal changes in a work environment," with "moderate to greater difficulty working effectively with others, but could remember and comply with simple job instructions and could concentrate adequately for low demand regular work." (AR 65-66.) She did not assign any particular weight to Dr. Pierce's opinion — or any of the mental-health physicians' opinions — and she never discussed or even mentioned his statement concerning one- or two-part instructions.

8

B. <u>Analysis</u>

A limitation to simple, repetitive tasks is not the same as one restricting a claimant to one- or two-part or -step instructions. See <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1003-04 (9th Cir. 2015) (as amended) (distinguishing between two). Indeed, although a limitation to simple, routine tasks is consistent with jobs requiring a reasoning level of two, one to one- or two-part instructions is not. See <u>id.</u>; <u>Banales v. Berryhill</u>, No. EDCV-16-1247-AGR, 2017 WL 651941, at *2 (C.D. Cal. Feb. 16, 2017). Claimants restricted to following one- or two-step instructions can perform only jobs with a reasoning level of one. <u>Apr. M. v. Saul</u>, No. 2:18-CV-10083-GJS, 2020 WL 1062145, at *3 (C.D. Cal. Mar. 5, 2020) (finding that an RFC limiting claimant to two-step instructions is "inconsistent with . . . jobs . . . requiring Reasoning Level 2"); see also <u>Lara v. Astrue</u>, 305 F. App'x 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are elementary, exemplified by such tasks as counting cows coming off a truck, and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication — in other words, Reasoning Level 2 jobs.").

In evaluating doctors' opinions, an ALJ must state what weight she has given each opinion and explain why. See SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996); §§ 404.1527(e), 416.927(e) (noting that unless treating physician's opinion is given controlling weight, ALJ must explain weight given to

state-agency physicians' opinions);[5] <u>Martin-Quigley ex rel. A.Q. v. Berryhill</u>, No. 2:17-CV-01464-RFB-VCF, 2018 WL 1802473, at *3 (D. Nev. Feb. 1, 2018) (finding error when ALJ cited portions of doctor's opinion without discussing why other, unmentioned portions were implicitly rejected, making it ambiguous what weight was given to it overall), <u>accepted by</u> 2018 WL 1796290 (D. Nev. Apr. 16, 2018).

As an initial matter, it is not clear that Dr. Pierce intended to limit Plaintiff to one- or two-part instructions simply by observing that she was capable of following them. Unlike an RFC, which the regulations define as representing the most a claimant can do, <u>see</u> §§ 404.1545(a)(1), 416.945(a)(1), nothing in the Administration's instructions or guidance concerning consulting opinions suggests that they are to be written that way. <u>See</u> §§ 404.1519n, 416.919n; Soc. Sec. Admin., Program Operations Manual System (POMS) DI 22510.021 (Jan. 15, 2014), https://secure.ssa.gov/apps10/poms.nsf/lnx/0422510021 (stating guidelines for consulting-examination reports). Plaintiff cites no authority for her assertion that Dr. Pierce's statement was necessarily the "high end of [her] ability." (J. Stip. at 7.) In other words, just because Dr. Pierce said she could do simple one- or two-part instructions doesn't mean she couldn't also do more than that. <u>See</u> <u>Etter v. Astrue</u>, No. CV-10-

---

[5] For claims filed on or after March 27, 2017, the rules in §§ 404.1520c and 416.920c (not §§ 404.1527 and 416.927) apply. <u>See</u> §§ 404.1520c, 416.920c (evaluating opinion evidence for claims filed on or after Mar. 27, 2017). Plaintiff's claims were filed before March 27, 2017, however, and thus the new regulations do not apply.

582-OP, 2010 WL 4314415, at *5 (C.D. Cal. Oct. 22, 2010) (rejecting argument that doctor's opinion that claimant was "capable of understanding, remembering and carrying out simple one to two step tasks . . . necessarily limited [her] to tasks involving only one and two steps"); Johnson v. Colvin, No. 13-CV-04862-EDL, 2014 WL 5794337, at *8 (N.D. Cal. Nov. 6, 2014) (finding that doctors did not phrase statement concerning one- or two-step instructions as limitation and that record as whole supported RFC for "simple, repetitive tasks").

But in light of the ALJ's failure to specifically assign any particular weight to any mental-health doctor's opinion, including Dr. Pierce's, or to even mention his statement concerning one- or two-part instructions, the ALJ rendered the record ambiguous on this score. See Garcia v. Colvin, No. 16-00652-JEM, 2016 WL 6304626, at *6 (C.D. Cal. Oct. 27, 2016) (finding reversible ambiguity in record when ALJ failed to acknowledge and resolve difference between "simple, routine, non-stressful work" and "easy 1-2 step directions" in doctor's opinion); see also Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ erred by "not fully accounting for the context of materials or all parts of the testimony and reports"); Wilson v. Berryhill, No. 1:16-cv-01861-SKO, 2018 WL 1425963, at *34-35 (E.D. Cal. Mar. 22, 2018) (finding error when ALJ failed to address or account for doctor's statement concerning one- or two-part instructions). An ALJ has an affirmative duty to resolve ambiguities in the record, Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (as amended), and here she did not do so. Moreover, the error was not harmless because, as Respondent does

not dispute (J. Stip. at 14-15), the jobs identified by the ALJ that Plaintiff could perform all require at least reasoning level two, which is inconsistent with a limitation to one- or two-part instructions. Rounds, 807 F.3d at 1004; see also Burson v. Berryhill, No. 15-CV-04991-DMR, 2017 WL 1065140, at *4 (N.D. Cal. Mar. 20, 2017) (ALJ erred by limiting claimant to "simple, repetitive tasks" without either including or expressly discounting doctor's opinion that claimant was capable of performing one- and two-step instructions).[6]

Accordingly, the ALJ erred, and remand is appropriate to allow her to resolve the ambiguity in the record. Indeed, when such ambiguities exist, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Rebekah H. v. Comm'r of Soc. Sec., No. 6:17-CV-01701-AA, 2019 WL 1442200, at *4 (D. Ore. Mar. 30, 2019) (citing Dominguez v. Colvin, 808 F.3d 403, 407 (9th

---

[6] Respondent argues that in light of Dr. Pierce's observation that Plaintiff was capable of some work more demanding than only simple and repetitive, he necessarily found that she also could do work involving more than one- or two-step instructions. (J. Stip. at 12.) But Dr. Pierce also noted that Plaintiff could concentrate "just adequately" for "low-demand work" (AR 794), which the ALJ apparently translated into a moderate limitation in concentration, persistence, and pace (see AR 63). Moderate limitations in concentration often result in an RFC for one- and two-step instructions. See, e.g., Rounds, 807 F.3d at 1004; Murray v. Colvin, No. C-13-01182 DMR, 2014 WL 1396408, at *4 (N.D. Cal. Apr. 10, 2014) ("Consistent with the medical evidence in the record, the ALJ properly translated Plaintiff's moderate limitations with respect to concentration, persistence or pace into a limitation to 'one-to-two step instructions.'" (citation omitted)). Thus, there remain ambiguities in Dr. Pierce's opinion and the ALJ's consideration of it.

Cir. 2015)).

## VI. CONCLUSION

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[7] IT IS ORDERED that judgment be entered REVERSING the Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this Memorandum Decision.

DATED: July 16, 2020

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[7] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

13